The first case today, number 231504, United States v. Francisco Javier Ortiz-Colon. Will counsel for appellant please come up and introduce yourself on the record to begin. Good morning, Linda Backhill for Francisco Javier Ortiz-Colon. Excuse me, I have a cold. I would like to reserve two minutes for rebuttal. You may. And I will rest on the brief on the voir dire and sentencing issues. I'd like to start with a question of the jury notes. There were three that are troubling, 10, 12, and 17, and they kind of escalate in the prejudice. I want to concentrate on note 17, in which a juror wrote and the court subsequently read to the entire jury, we can tell that the images were acquired by blackmailing, by threatening. There's plenty of evidence at hand. Can we proceed and simply have the defendant testify? This was before two witnesses had testified. The two witnesses were victims. It was before any closing instructions were given. And at sidebar, the court proposed a very anodyne instruction. The defense agreed. Are you alleging that the court plainly erred in not excusing the juror or in reading the note? Both. Both. But counsel, you're also saying defense agreed, so. The defense agreed to the instruction that the court proposed. At no moment did the court say, I am going to read this note aloud. And when the court came out and read the note, no one had any warning whatsoever. The parties discussed an instruction. Was there an objection after the? No, Your Honor, there was not. So you agree it's plain error? Absolutely, yes, I'm agree. And as to the plain error analysis, if we treated it as an error in reading the note rather than failing to excuse the juror. Well, it is both, Your Honor, but yes. We're taking that first one first. Yes. How do you think that argument runs? What's the legal framework you want us to be applying? Why would it be clear? And is that subject to a prejudice analysis? And then how can you satisfy the prejudice burden given the evidence? Yes, Your Honor, I believe that this is one of those errors that is indisputable in light of controlling law, language from Rob. Okay, what is the error? Excuse me? What is the error? The error is contaminating the jury with an incredibly prejudicial statement. And not excusing the juror who made that statement. It is- Setting aside the excusing part first. Yes. I thought you were independently arguing that even if the juror, let me ask it this way. Had the juror been excused, would there still have been an error? Absolutely. Okay, so just forget the excusing of the jury. Just what is the error that, how do you want us to read it? Is it due process violation? It is a due process violation because it created a presumption of guilt. And clearly demonstrated premature deliberation. The language of the note also is not I, it's we. So we don't know, but it suggests that that was a conclusion that more than one juror had reached. Couldn't defense counsel below have asked the judge, maybe poll the jury or ask when it's sometimes done, it's usually done later in the case. But couldn't that, and it wasn't asked. Well, the judge did promise to poll the, to review the juror in private after giving the instruction. But that still- He remained on that. That still leaves the instruction problem. Right, exactly, exactly. So in response to Judge Heppi, I want to respond. I have very little grounds to defend what trial court did. This is a problem with this case. The trial attorney did. He could have objected. I can put myself in that lawyer's seat and be completely stunned by what just happened. Clearly, the attorney should have objected. There's- Can I ask you just two questions on that point? One, there is a potentially an ambiguity as to what was agreed to, as to what would be read. I think if the transcript is read word by word in sequence, there is no ambiguity. The judge said, shall we read this to the juror? This. This, after discussing the instructions. There was no mention of the note. And then defense counsel says, we're sure it's part of the instructions anyway, referring to the classic instruction about keeping an open mind, burden of proof, etc. Well, let's say I thought there was an ambiguity on that point. How does that figure into the plain error analysis when there's then no follow up objection? In other words, it does appear that the district, I mean, unless your view is the district court, without giving anybody any notice, just decided to read the note. Which I believe is what happened. I believe that's what the transcript shows. Okay, so let's take it your way. So let's say that's what happened. Then we're on plain error. You say it's a due process violation. And then it would be subject to prejudice, right? Prejudice analysis? I believe that an error of this magnitude is inherently prejudicial. Okay, is there a case law that supports that conclusion? No, your honor, and I found no case that discusses a situation where the entire jury has been told that one of their members has decided that there's plenty of evidence. And all they need is to hear from the defendant before the evidence is presented and does that in the plural. If it's subject to prejudice analysis, how can you satisfy that in plain error here given the evidence? Because the rest of the jurors heard this opinion. Don't ordinarily we say on plain error, when it comes to prejudice, that if there is an overwhelming amount of evidence, a very, very strong case, it's just hard to show. It's hard to show, your honor, I agree. Isn't this a very strong case, as a matter of evidence? Or is there something I'm missing that you'd like to identify about why this is not a case in which the evidence was strong? Your honor, the jury deliberated for seven and a half hours. There were two jurors asked if they could be excused from deliberating. The jurors wrote a note saying they were exhausted and needed a break. They called for evidence about a count, count seven, where the alleged victim was never identified during the presentation of the evidence. And there was, I'm not argued, but there was more than one computer savvy person in that place, who was a close relative, according to the transcript, of the defendant, Mr. Ortiz Colon. The case could have gone a different way. The jury would not have been out for seven and a half hours had it not been questionable. But your honor's- Why doesn't the seven and a half hours of deliberation show that the jury was thorough in its deliberations and didn't hastily come to a conclusion? That may be the case, but I'm saying this was not a five minute decision. And I just want to emphasize that prejudice is hard to show here. But this is a gross distortion of the adversary's system of justice. And- Are you claiming this is like a structural error that in and of itself warrants, I believe you may, again, I can't remember 100%, but I don't know if I read structural error here, but are you claiming it's a structural error? Ordinarily, misreading a jury note or insufficient instructions are not structural errors. There is no category that this error fits into. But yes, I believe that this is such a gross distortion of the adversary's system of justice that under these facts, the convictions must be reversed for that reason. Let me further ask, again, there was no objection, as you said earlier. There were jury instructions given at the end of the case, as Judge Thompson noted, 7.5 hours of deliberation. Doesn't the fact that instructions were given and telling the juries how to deliberate and review the evidence, doesn't that cure even if there was a potential error? Not at all, Your Honor. The keep an open mind, presumption of innocence, do not deliberate instruction had been given eight times before the juror wrote this note saying we can tell this is enough evidence. So I have no faith that that instruction repeated again at the end or immediately after reading that devastating note had any curative effect whatsoever. I would like to pin that down because I assume that the same is true in this jurisdiction. At the beginning of the trial, did the court give preliminary instructions to keep an open mind? Yes. Okay, and so all of the jurors, maybe this one took a nap at that point, but we assume the other jurors heard that preliminary instruction. Yes, Your Honor. And we presume that jurors follow the instructions. Until they heard- And you said that there were seven other occasions where that instructions were- Yes, there was an open mind instruction given pretty much at the end of every day, and it was repeated. I mean, it was repeatedly given. The problem is, after seven or eight of those, the jurors heard we have already determined that this was acquired by blackmailing, by threatening. It was something that if a witness had testified to that effect, it would have been stricken. A juror is expressing something even more than simple legal guilt on the counts of the indictment. And you said that juror was never voir dire? Never voir dire, no. The judge promised to do it? No one ever requested it after that. Did not. Okay. May I just turn briefly, in the time that I have remaining- Let me ask just a little quick follow up. The jury was never voir dire at the end of the case where the jurors individually polled. Was there a request for that? Were they polled or- There was no request. Your Honors, this case is coming back in some other form if it's not reversed. I want to mention the double jeopardy issues, because I think there are two double categories of double jeopardy issues here. There is the possession and receipt. And there is the incorporation of the production in the coercion instruction. There is no precedent for allowing a lesser included offense to be incorporated in another, and not calling that double jeopardy. And the court made the production a lesser included offense of coercion. I can rest on the brief on possession and receipt. The key thing there from your perspective is that the way it was then presented at trial didn't make clear at any point that the only images that could be considered distinct from the images that could be considered- Absolutely, Your Honor. Absolutely. Just on this point, do you know what, how to, if it was the same images for both, I understand the argument fully though. Can you just help me with, if there are a broad range of images, and images sufficient for one are distinct from images that would be sufficient for another. How does that play in, because here we have, it says any and all images. And obviously, some of the images would have been enough solely for one. Some would have been enough solely for the other. So, and we don't know exactly which images the jury, obviously we don't know which images the jury looked at for each of those convictions. So how does that affect the double jeopardy analysis? Because the instructions don't talk about images or individual images, and neither do the statutes. The instructions tell the jury, talk about material. And the question is, what is material? Well, it's the things that were sent back and forth. So the theory is that basically the same material was being presented to them for both counts. Yes, it was. You got it. Unfortunately, my time is up. Are there any more questions? Let me just ask you one very quick question. I note from the record that the trial attorney is a highly experienced criminal defense attorney. Excuse me, yes? Yeah, my question is, maybe she chose not to raise these objections. There might have been a strategic reason for doing so. So isn't the better avenue perhaps a 2255 where she can say why she didn't object or because sometimes attorneys may decide it's better to go this way or we might have a better shot this way. First of all, as a matter of fact, it was a he. Number two, I don't think it was a highly experienced and respected trial attorney at all. Number three, the number of errors, not just on this issue, but throughout. No attorney could conduct a case that way. And planning to sandbag and have a second bite at the apple. I mean, that's just not plausible on this record. Okay, so just one quick question. The attorney who was present at sentencing, that was not the trial attorney then? No, no, no, no. Okay, so I saw that's what I saw. No, no, no, your honor. It was Miguel Robles Rodriguez. Okay. Thank you. Okay, thank you. The attorney who was the trial attorney, was that a court appointed attorney? No, your honor. It was retained. Thank you. Thank you. Thank you, Counselor Aperolis. Counsel, please come up and introduce yourself on the record. Good morning, your honors. May it please the court. Julia Maconiatis for the United States. Like Sister Counsel did, I'm going to jump into the claim regarding the alleged error in the court's handling of the jury notes. But I would like to take it a step beforehand, because it is the government's- I'd like to take it a step, one step before, the step you're probably going to take it, which is, I've never seen a trial where the prospective, excuse me, the prospective witnesses weren't read to the jury so that you could figure out if anybody knows them. Why wasn't that done? Your honor, it is unclear from the record why that was not done. There was no objection. And in cases like this, where it is unclear from the record, this court has notoriously held- I mean, generally, and once again, maybe this is peculiar to the court's hearing, who initiates that questioning? In other words, does the state request, I'm sorry, the government request that the list of prospective jurors be read to the jury? Or is that something that's generally initiated by the defense counsel? Your honor, I would be remiss to say that I know what the procedure is. For the past decade, I've been a sole appellate attorney, and I don't want to induce the court into error. I would always ask the government to read the list, but I don't know what my former colleagues did. But I know, and having practiced in the district, I know it's usually a practice I can't say in every case, but- And from my experience reading trials, I do know that normally the parties get up. They introduce everybody from the US Attorney's Office and the people sitting at the table. In this case, they did talk about law enforcement witnesses, but the names, they were not on the record at that time. Let me ask you along those lines Judge Thompson asked. It's highly unusual, and I'm going to what Ms. McKeown was going with. I saw sentencing counsel was highly experienced, but she was saying trial counsel was not experienced. Normally, probably every attorney would try to do that at the voir dire. There's a lot of other times throughout the trial, there's no objections when probably everybody would have objected. I said to myself, maybe it was a judgment call on behalf of an experienced attorney. But isn't that an issue in this case? Because it's so many times there's no objection, no objection. Or even a request for mistrial in some instances. So if you were to add, even in plain error, if you were to add one error, error, error, it just adds to one big error, what do you have to say about that? Well, Your Honor, I would respectfully push back on that. If I may get back to my original point, which I probably recognize from the benches, this hot bench that you, that this case falls under, especially with this jury note, this court's jurisprudence in Corbett. When a court receives a note and then the parties take the time to edit the response, where input is requested from both the government and from both the defense attorney. And then that input is incorporated, then the instruction is given, and the court, and there's never an objection, that is found to be waived. But in context, I mean, if we, I mean, Chief Judge Barron is saying maybe there's some ambiguity. If we think there is an ambiguity, that in context what was being discussed was the instruction, not the question, then what? Well, Your Honor, I think the record shows why there was no ambiguity. Perhaps, Chief Judge Barron, the ambiguity arises when they are going back and forth. But after the court says, I am going to read it to the whole jury, which was what Mr. Ortiz-Colón's attorney specifically said, the court began to read the instruction. There was silence from the defendant. And we're not saying that that failure to object there- But that's sort of my question. You must be saying that this, we're going to read this, must have meant I'm going to read the note and not just the instruction, correct? Well, no, I said, should we impart this, considering the court had previously- You must be talking about the content of the note from the jury. The content of the note with the instruction. And the, your opponent, counsel, says in context that's not plausible, because all they were talking about was not the content of the note, but the content of the instructions about keeping an open mind and like, right? That's what she is saying. And I would like to point to the court, to the record, which casts doubt upon it. Because after that happened- But I don't want to get to after. But I think it shows, Your Honor, if I may. But that after, does he say anything? Well, exactly. This is precisely my point. The court then asks counsel, is there anything further for sidebar? If, indeed, the court had done something that counsel did not anticipate, it would have said, Your Honor, why did you read the note? It could have- Or, counsel was made a terrible, tragic error. That's what we don't know. You're saying we have to read the failure to object back into the earlier things so that we conclude effectively he waived. And the opposite view is, it was clear as day they were only talking about the instruction, yet the note is read. If that's error, then trial counsel forfeited it, but didn't waive it by not objecting. So then we're on plain error. Let's imagine- I will move on to plain error. So now let's imagine we're on plain error. So again, if not waived, it's forfeited. And here, the biggest block for Mr. Ortiz-Colon is that there isn't any irrefutable precedent to show that what happened was clear and obvious error. How could it not be? Now, if we look at this court's- How could it not be? Well, this court has a decision in- What was the objective? And he said, you know, you can't read a note to the whole jurors saying that one of the jurors thinks my client's guilty mid-trial. And the judge said, I'm going to read it anyway. Would that not be a clear error? Well, Your Honor, the closest case that I can find, and it is cited in our brief, is United States v. Jadlow. And in United States v. Jadlow, it's even a step worse, I would say, because here the court was always explaining to the jury that you cannot engage in pretrial deliberations. And in United States v. Jadlow, we have an- Well, I don't think it's any good for this one. I'm sorry, Your Honor, I didn't hear you. Obviously, that seven times hearing that didn't work for this, at least this one juror. And the juror said so much in his note that he apologized that he didn't understand the judicial process very much. When we look at the note up until the end, Your Honor, he even says, please excuse my prior knowledge of how trial is completed. I'm just a little impatient. I know, but the judge is giving instructions all along as to how the trial is to proceed. One of those instructions being, don't come to any kind of early conclusion about the result. Listen to all of the witnesses first. Keep an open mind. And if that's repeated preliminarily and then every day at the close of trial, somebody wasn't listening. I mean, that's not a matter of not understanding procedure. That's a matter of not listening or rejecting the court's directive. Which would then in theory, if I may follow your- Anybody would have declared, any competent attorney would have sought a mistrial at that point. And here, no mistrial was sought, correct? No mistrial was sought. And the rubric which I believe sister counsel and the way that the government responded, it is treating this as a case of potential pretrial deliberation. And when we look at this- In part. In part, the other part is that it was communicating highly prejudicial information to the jury for no reason. Isn't that true? I mean, what is the answer to that? But I understand the pretrial deliberation point, which would then go to excusing the juror. Put aside that for a second. What is the possible reason why it would be appropriate to inform the jury mid-trial that one of the jurors thinks it's an easy case and he's guilty? Well, no, your honor. To that question, we would then move then to the harm inquiry and then to the fourth prong of plain error. Okay, so just so I understand it. Your first level on the instruction being problematic because it informed the jury of something highly prejudicial. This is putting aside the excusing the juror or not voir direing the juror afterwards, all those issues. On that first just instructional point, your first level argument, it's waiver. It's waiver.  Second level- I thought your second level was it wasn't a clear or obvious error. Clear or obvious error in the court's instructions. Because what the court did, even though it had the response. But in reading that information to the jury, you're agreeing that that is a clear or obvious error, insofar as it wasn't waived. I'm agreeing that it could be an error, but underneath the circuit's precedent. And I do not believe Sister Counsel put in her brief irrefutable precedent in this circuit, which is the second prong of plain error. That's why I'm asking- That we don't get to that. What I'm asking you, on the obvious side, is there any possible world in which it would be appropriate to inform the jury of that information absent a waiver? Well, Your Honor, that's what the government actually said at that point. Because the government said, we don't know if everybody heard about this and whether the instruction should have been imparted. So that's why I would switch to the prejudice prong. Okay, and then on prejudice? And on prejudice, there is a huge roadblock. If we look at what the court said in Jadlow, or in any issue of prejudice. First of all, any question of pre-jury deliberation and of what the defendant's right to testify was, was cured by the court's instructions. And we know that this court has repeatedly said that juries are presumed to look at instructions. Then, putting that aside, we look at the overwhelming evidence of this case that has not been contested. There's no sufficiency of the evidence on appeal. And there was actually no issue below that this actually happened, because Mr. Ortiz Colon's defense was, it wasn't me, not that these things didn't happen. The evidence was overwhelming and it was corroborated, not only through testimony, but through images and through the chats. But taking it even one step forward. That was him. Yes, and taking it even one step forward. What sister counsel tries to show as the possibility of prejudice shows exactly the opposite. The fact that there were so many jury notes during deliberation to look at the uncensored evidence. Requesting evidence for specific accounts. Saying to jurors who didn't know whether they had to vote. If indeed everybody was so biased and quick to convict, if anything it shows that they hadn't made up their mind yet and didn't want to be the impediment. And for prejudice under plain error, you have to show a concrete error. It cannot be speculative. And nothing from those jury notes shows that the jury in fact was prejudiced. The fact that after a whole day- Why two jurors didn't want to vote? Your Honor, it's not clear from the record. But it was during that first day that they had spent listening to closing arguments, to rebuttal, to the jury instructions. And then they went to retire to look at the evidence. And they requested the specific evidence. And it shows a measured consideration of every count. Because at one point they went back to say, where is the evidence for this count? And of course the court didn't specifically say you have to look at ABC. It says look at the evidence that you have there. So it shows that the jury wasn't quick to convict. If they had been so poisoned, we wouldn't have had prolonged deliberations in a case with such overwhelming and unchallenged evidence. And I would be remiss, Your Honor, Your Honor's- This same prejudice argument you think applies equally to the question of whether there would be a problem. Assuming the challenge isn't to the informing the jury of the content of the note, but not what during that particular juror or excusing that juror. Correct, Your Honor. Correct, Your Honor. And then if we move to prong four, the many times we don't-  Yes. You're saying that because the court did not do that, the defendant nonetheless cannot show prejudice and not while during that. You're applying a prejudice analysis. Yes, Your Honor. And in Jadlow, and in Jadlow, which is a case that deals with premature deliberation because of a jury note. That was actually a preserved claim. And notwithstanding, this court determined that this is not a structural error when we're dealing with jury pre-deliberations. It said that it's definitely not a structural error in Jadlow. And it said that because it was preserved, this court assumed without deciding whether it was harmless beyond a reasonable doubt for the constitutional dimension or whether it was just the regular harmless analysis. It didn't choose because in that case, there wasn't any evidence of poisoning of the jury or bias. And part of the reason that there wasn't was because they failed to develop the record. And in this case, there's a failure to request either, even though the court had said that it was going to pull the jury after the apparent acquiescence of what happened. There was never a, Your Honor, excuse me, why don't we just pull this juror to double check that it wasn't? So that lack of evidence was shown to show why that it's speculative, that why you can't show a concrete bias or harm. Just so I understand, just to play this out, suppose the note said, I've been telling everybody that he's guilty. I've been saying it from the start of this trial. I've been telling all my fellow jurors. They're not listening to me. It seems like a waste of time. Suppose that's what the note had said. Do we just do a regular prejudice analysis? Well, Your Honor, then we would say, then, no, I would still believe that under this circumstances, it's plain error. And there, we would have the regular prejudice analysis under the plain error. And how would the prejudice analysis go? We know for a certainty that the juror has been communicating with the other jurors and trying to convince them to convict. Oh, in the hypothetical. I'm sorry, Your Honor. Yes, and trying to convince them to convict. But the evidence is just as strong as it is in this case against the defendant. Is that prejudicial or not prejudicial? Well, I would argue under that hypothetical, Your Honor, that it's not prejudicial because we do have the curing of the jury instructions. So if that had happened and then the court goes in and explains the instructions and explains that you need to keep an open mind, that the government has to show evidence for every single count in this case before you can engage in your deliberations, then that also cured it in addition to the overwhelming evidence that's unchallenged. And if I may make that – The best case for that proposition is this last – Well – JADLOW is the best case for that? JADLOW is that there has to be some prejudice on the record. And that was even in a preserved case. But the prejudice there, I thought – the reason I asked the hypothetical is it sounded to me you were saying the prejudice had to be some indication that the bias of the pre-deliberation by the juror was communicated to the other jurors. Yeah, but there was no evidence of that on the case. Well, the evidence here is that the prejudice by the juror that was being expressed was in fact communicated to all the jurors by the reading of the note. I think that – I don't think that that's the only reading of the note, Your Honor. And then when taken into consideration with – No, no, no. Because the note was read. Oh, I thought – okay. I'm sorry, Your Honor. I misunderstood your question. It's true, I understand, we don't know that the individual juror did talk to anybody else. That's what I thought you were saying, Your Honor. But we do know that the individual juror's pre-deliberation determination was in fact communicated to all the other jurors because it was read from the bench. By virtue of the reading, I understand. So why doesn't that just mean that the bias you're saying JADLOW says we have to find is present here? We know there was that bias because the very thing that we're concerned about was in fact communicated. Because then the court cured it. And taking that together with the unchallenged evidence, the overwhelming evidence, it is the government's position that Mr. Ortiz cannot establish prejudice. And I realize I'm over my time, but if – One more thing before you move off Chief Judge Barron's point. As defense counsel said, the note talked about we. So an inference from the use of we means that there's a collective feeling about we've already heard all of this and we just want to hear from the defendant, which independent of premature deliberation, you have somebody not understanding the court's instruction that the defense is presumed innocent and never has to testify. Well, Your Honor, I think there's also another possible interpretation is that we heard the evidence as we the collective jury, not that we are prematurely deliberating on this. And this is precisely the case why, if there is a fuller record, this court would be more able to be able to grapple with these claims. And for that, defense attorney did not request to poll that juror or to ask that juror any further, right? That is correct. Could you – yeah, okay, go ahead. If I may just dovetail quickly, I realize I am over my time, to the fourth prong of plain error. I was going to ask you, 20 seconds, touch the fourth prong because you – The fourth prong of plain error, a defendant must show that everything calls into question the fairness, the integrity, and the reputation of the judicial proceedings. And this court in the past, especially in cases of child exploitation, has said when there is overwhelming, giving overwhelming, unchallenged evidence, the nature of the evidence in the case, there's a greater threat to the fairness, integrity, and public reputation of the judicial proceedings in sending a case like this back for trial. What was the error in that case? In this case, it was a – in that case – excuse me, this is directly from Perez Jimenez, I mean Perez Jimenez, excuse me, Perez Rodriguez, which was a sting operation. And the sting operation in that case, they said there was no victim. And it footnotes another case saying where there are victims, victims, and in that case, it was a brutal – What was the error in that case? The error in that case, I'm not – Because the error here is not – if we were to find there was an error, isn't your typical error. It's an error that goes to whether there was an impartial jury effectively. So that would, I think, in the fourth prong calculus, way rather differently than your typical trial error, which may have been clear, but which in a case with a lot of victims, we've suggested under the fourth prong, we should be hesitant before we overturn it when there was no objection. This is just an unusual case. If you credit, there's an error, and I understand why you're saying there wasn't. Well, even if this court were to assume there was an error, I think we have to take it in conjunction with prong three to the effect that there is overwhelming, unchallenged evidence. And so that if you were to put these – We only get to four. We only get to four if you do get to – If we disagreed with you. If you do get to three. But in looking at it in the totality, here, re-victimizing these victims again when it's undisputed they were sextorted and they produced child pornography and that was not challenged at all does call into question the fundamental fairness of these proceedings when there's unchallenged, overwhelming evidence. And also for plain error, here there's no on-point controlling case law. It's not clear. So that benefits – That was my original point. If we put waiver aside, there's no irrefutable precedent in this case. I thought you were – maybe I'm backtracking now because I thought you, when we had our earlier colloquy, I thought you said even the government saw that insofar as there was no waiver, it was inappropriate to read the content of the note to the jury. Your Honor, that would get you to prong one if there's an error. But is it clear or obvious giving irrefutable precedent – Well, it seemed clear or obvious to the government. That's why they said you shouldn't have done it. No, no, no. The government, what it said, and I'm sorry if I was unclear in that, it specifically stated when they were talking about the jury note – let me just get to my – the government noted it was not sure whether it should be shared with the other jurors. And the court said – In my experience, that is a polite way of suggesting that that was not a good thing. We need a curative instruction. But maybe I should ask it just one last time. Is there any argument the government would like to advance as to how under existing case law it would be appropriate to inform the jury of the content of that note? No, Your Honor, I do not know any in existing case law, but I think that argument cuts both ways because under plain error, they have to show that existing case law. But the case law is clear. You should not – do you dispute that highly prejudicial information should not be read? No, Your Honor, I do not. Do you think this was highly prejudicial? Your Honor, we agree that it should not have been read. So under what – how is it not clear under the basic case law that this should not have been read to the jury, assuming there was no waiver? And to me, there is this issue of whether the judge thought that the defense counsel agreed to it. Putting that aside, I guess I'm just – And additionally, they thought they were going to pull the juror also. In this case, it's a lot of shoulda, coulda, woulda. Last time, because this matters a fair amount, it is true there's no directly on-point case. But is the government of the United States saying that it is less than clear that this should not have been read? The government agrees that there was an error. Under this Court's precedent, I can't point to irrefutable precedent in this situation as required by plain error. But even assuming so, we believe that there was no prejudice and that the fourth prong of plain error would require affirmance in this case. And I'm not trying to be evasive. I got it. I got it. Thank you. Thank you very much. Thank you, Counselor. Attorney Bacchial, please come up and reintroduce yourself on the record. You have a two-minute rebuttal. Linda Bacchial. Honorary rebuttal for appellant. Jadlow is a case that I have cited. It says here the record is silent on whether the jurors engaged in premature discussions. It also says that the focus was on whether there was a loss of the jurors' impartiality as the prejudice from an instruction allowing premature deliberations. The case there was that the Court invited, generously speaking, invited the jurors to talk about the case. So they couldn't reach a decision, but they could talk about the case. And that was a pure, is that error reversible? And the Court said no, because we don't know if they really deliberated, if they really discussed. There's no evidence that they formed an opinion and specifically said that it's not structural error because premature deliberations may be, and I'm quoting, may be tangential to the jurors' determination of guilt or innocence. Here it was not tangential. It was conclusive, and the juror was not asleep. The juror stated, I don't understand something or other. I'm just impatient. He wanted to get to the end of this by convicting. That's what was communicated to his fellow jurors. Presumably, he took it upon himself to represent at least one other member of the jury. I have nothing further. What do you have to say about prejudice, though? The prejudice is that he could not, at that point, he could not have a fair trial because the jury already Prejudice in the sense of there being overwhelming unrefuted evidence of guilt. Defendants who elect to go to trial, and the evidence turns out to be overwhelming, unquestionably, have an absolute right to a fair trial, to a presumption of innocence, and to a verdict rendered after hearing. All the evidence Let me ask you, if counsel doesn't ask for a mistrial, which he certainly could, and I'm sure at least some judges would have probably granted the mistrial. Let's start over again. But if counsel doesn't do that, why does the process have to start again at that stage? You might have a better argument maybe at a 2255 stage, but if counsel doesn't do that, the court's not under an obligation to declare a mistrial if it's not asked. I guess it could, but if it doesn't, you can't put the burden on the court. The defendant has to have That's not my position, but a court certainly could, seeing the train wreck that was happening, but the court caused the train wreck, so apparently didn't believe that it was a problem. I don't think the answer here is, well, the defendant has a 2255. I think that if this court declares that this error is not one that requires reversal, notwithstanding the evidence, then we're going to have a very, very dangerous precedent for the future, and I think this will call, does call into question, the reputation of the judicial system for fairness in criminal proceedings.  Thank you, counsel. That concludes arguments in this case.